Case No. 14-1496

## UNITED STATES COURT OF APPEALS
## FOR THE SEVENTH CIRCUIT

_____

**KEVIN GERARD and MARGARET GERARD,**

      **Plaintiff-Appellees-Appellees,**

**v.**                                    **Case No. 14-1496**

**MICHAEL J. GERARD**

      **Defendant-Appellant-Appellant.**

_____

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT,
EASTERN DISTRICT OF WISCONSIN, THE HONORABLE
CHARLES N. CLEVERT PRESIDING, E.D. WIS. CASE NO. 13-CV-114**

_____

**APPEAL BRIEF OF APPELLANT, MICHAEL J. GERARD**

_____

Michael P. Dunn

Kerkman & Dunn
Attorneys for Michael J. Gerard
757 N. Broadway, Suite 300
Milwaukee, WI 53202
414-277-8515
414-277-0100 (fax)
mdunn@kerkmandunn.com

## DISCLOSURE STATEMENT

The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1):  Michael J. Gerard.

The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court: Kerkman & Dunn.

# **TABLE OF CONTENTS**

Disclosure Statement                                                    ii

Table of Authorities                                                    v

Statement of Appellate Jurisdiction                                     1

Statement of Issues Presented for Appeal                                1

Standard of Appellate Review                                            2

Statement of the Case and Facts                                         3

Summary of Argument                                                     10

Argument                                                                11

    I.    The lower courts failed to properly apply Wisconsin issue   11
        preclusion law to the Verdict and summary judgment record.

        A.  Neither the record nor any findings in the Verdict   12
            establish that the jury either addressed or necessarily
            determined that Michael knew he had no legal
            justification to record the Memorandum and any such
            finding was not essential to the Verdict.

        B.  Neither the record nor any findings in the Verdict   15
            establish that the jury either addressed or necessarily
            determined that Michael recorded the Memorandum
            desiring to inflict injury on Kevin and Margaret and
            any such finding was not essential to the Verdict.

C.  Neither the record nor any findings in the Verdict establish that the jury either addressed or necessarily determined that Michael recorded the Memorandum knowing that it was highly likely to result in injury to Kevin and Margaret and any such finding was not essential to the Verdict.     17

II.  The lower courts failed to properly apply the summary judgment procedure.     18

A.  The lower courts failed to review the record and all reasonable inferences arising therefrom in a light most favorable to Michael.     18

B.  Disputed issues of material fact exist.     20

Conclusion     20

Certificate of Compliance -Brief     21

Certificate of Compliance -Appendix     21

# TABLE OF AUTHORITIES

<u>Federal Cases</u>:

*Cincinnati Life Ins. Co. v. Beyer*, 722 F.3d 939 (7th Cir. 2013)    2

*Honkanen v. Hopper,* 446 B.R. 373, 382 (B.A.P. 9th Cir. 2011)    11

*Jendusa-Nicolai v. Larsen*, 677 F.3d 320, 324 (7th Cir. 2012)    11, 13

*Kawaauhua v. Geiger*, 523 U.S. 57 (1998)    11

*La Preferida, Inc. v. Cerveceria Modelo, S.A. de C.V.*,    2
914 F.2d 900 (7th Cir. 1990)

*Stephan v. Rocky Mountain Chocolate Factory, Inc.*,    2
136 F.3d 1134   (7th Cir. 1998)

*Testerman v. EDS Technical Products Corporation*,    2, 18
98 F.3d 297 (7th Cir. 1996)

*Wheeler v. Laudani*, 783 F.2d 610 (6th Cir. 1986)    13, 14

<u>State Cases</u>:

*Grams v. Boss*, 97 Wis. 2d. 332, 294 N.W.2d 473 (Wis. 1980)    18

*Landess v. Schmidt*, 115 Wis. 2d 186, 340 N.W.2d 213 (Ct. App. 1983)    10

*Michelle T. by Sumpter v. Crozier*,    10
173 Wis. 2d 681, 495 N.W.2d 327 (Wis. 1993)

<u>Federal Statutes and Rules</u>:

28 U.S.C. §158 (a) (1)                                                    1

28 U.S.C. §158 (d)                                                       1

11 U.S.C. §523 (a) (6)                                   1, 8, 13, 14, 20

Fed. R. Civ. P. 56(a)                                                    2

<u>State Statutes</u>:

Wis. Stats. §706.13 (1)                                                  5

Appellant, Michael J. Gerard ("Michael), submits this appeal brief.

*Statement of Appellate Jurisdiction*

This is an appeal from a final judgment of the United States District Court for the Eastern District of Wisconsin ("District Court"), the Honorable Charles N. Clevert presiding. The judgment affirmed a judgment entered in the United States Bankruptcy Court for the Eastern District Court of Wisconsin ("Bankruptcy Court"), the Honorable Susan V. Kelley presiding. The Bankruptcy Court judgment was entered pursuant to a motion for summary judgment. The jurisdiction of the District Court was based on 28 U.S.C. §158 (a) (1). The District Court judgment was filed on February 5, 2014 and notice of this appeal was filed on March 6, 2014, less than 30 days after the filing of the judgment. This court has jurisdiction of this appeal pursuant to 28 U.S.C. §158 (d).

*Statement of Issues Presented for Appeal*

1. Whether the District Court erred in affirming the Bankruptcy Court's judgment that a jury verdict ("Verdict") rendered in a state court action (the "Ozaukee Action") between Michael and appellees, Kevin Gerard ("Kevin") and Margaret Gerard ("Margaret"), was issue preclusion as to the elements of a claim against Michael under 11 U.S.C. §523 (a) (6).

2.  Whether the lower courts failed to properly apply the summary judgment procedure to the question of issue preclusion.

*Standard of Appellate Review*

The issues presented are questions of law reviewed *de novo* by this court. *La Preferida, Inc. v. Cerveceria Modelo, S.A. de C.V.*, 914 F.2d 900 (7th Cir. 1990).  Under Federal Rule of Civil Procedure 56, summary judgment is appropriate "if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).  If a party moving for summary judgment has properly supported his motion, the burden shifts to the nonmoving party to come forward with specific facts showing there is a genuine issue for trial.  *Cincinnati Life Ins. Co. v. Beyer*, 722 F.3d 939, 951 (7th Cir. 2013).   On a motion for summary judgment, the reviewing court is required to construe the record and all reasonable inferences arising therefrom in a light most favorable to the non-moving party.  *Testerman v. EDS Technical Products Corporation*, 98 F.3d 297, 301 (7th Cir. 1996).

Whether issue preclusion applies with respect to the Verdict is determined by application of Wisconsin law.  *Stephan v. Rocky Mountain Chocolate Factory, Inc.*, 136 F.3d 1134, 1136   (7th Cir. 1998).

*Statement of the Case and Facts*

This appeal and the underlying Verdict and Bankruptcy Court judgment arise from a dispute concerning a parcel of vacant land on Lake Michigan in the Town of Grafton, Wisconsin (the "Grafton Lot," also referred to as "Lot 3"). In August 2007, Michael submitted an offer to purchase the Grafton Lot. To facilitate the purchase Michael enlisted the assistance of Kevin and Margaret. R.1-3 at 109. Kevin is Michael's brother. R.1-1, p.112, ¶6.

Michael, with Kevin's assistance, sought financing from TCF Bank. R.1-3 at 109. Michael and Kevin arranged for their father, an attorney, to draft an agreement ("Agreement"). *Id.* at 110. Under the Agreement, dated October 12, 2007, Kevin and Margaret would fund the down payment, obtain a mortgage for the balance of the purchase price and take title to the Grafton Lot. Michael would make all payments on the mortgage, real estate taxes and a construction loan for construction of a single family home on the Grafton Lot. Upon completion of the home, Kevin and Margaret would deed the Grafton Lot to Michael in exchange for Michael's payment of their out-of-pocket expenses at an interest rate to be agreed upon. R.1-1 at 35, App. 35.

The parties disagreed on the purpose of the Agreement.  Kevin testified in the Ozaukee Action that the agreement was not a contract but instead a business plan that was drafted in response to a request by TCF Bank.  R.1-2 at 186-89.  According to Kevin, when TCF Bank declined to finance the purchase of the Grafton Lot Michael agreed to a new oral agreement that was essentially identical to the Agreement except for the time period for Michael to purchase the Grafton Lot from Kevin and Margaret (1 year under the oral agreement versus upon completion of construction of a home on the lot under the Agreement).  *Id*. at 407-08.  Michael disputed Kevin's version of the facts and contended that the Agreement was a binding contract between the parties to co-develop the Grafton Lot.  *Id.* at 422.

On September 26, 2008, Michael recorded a Memorandum of Interest in Real Estate ("Memorandum") with the Ozaukee County Register of Deeds.  R.1-1 at 33-35, App. 33-35.  The Memorandum was drafted by Attorney Robert A. Carroll and states as follows in pertinent parts:

> Please take notice that by reason of a certain written contract dated October 12, 2007 between the undersigned **MICHAEL JAMES GERARD,** party of the first part, and **KEVIN P. GERARD** and **MARGARET M. GERARD**, husband and wife, party of the second part (the "***Contract***"), on the 16th day of November, 2007, the undersigned party of the first part acquired an equitable and beneficial interest in the following property (the "***Property***"), in Ozaukee County, Wisconsin:

> A copy of the pertinent portion of the Contract is attached
> hereto as **Exhibit A**…. By virtue of the Contract and
> pursuant to all terms, conditions and provisions of it, when
> title to the Property was conveyed to the parties of the
> second part by a certain Warranty Deed, dated  November
> 16, 2007, and recorded in the office of the Register of Deeds
> of Ozaukee County, Wisconsin on November 27, 2007 as
> Document        No. 0873933, parties of the second part have
> acquired title for convenience only and hold title for the
> benefit of party of the first part.

Kevin learned of the Memorandum in 2009 when a potential buyer searched the land records and found it.  R.1-3 at 111.  Kevin and Margaret sued Michael in the Ozaukee Action.  On July 23, 2010, Kevin and Margaret filed an amended complaint that alleged four claims: declaration of interest/quiet title, slander of title, partition and breach of contract.  R.1-1 at 14-39.  In the claim for partition, Kevin and Margaret alleged at paragraph 43 that they possessed a 94.73% interest in the Grafton Lot and Michael possessed a 5.27% interest in the Grafton Lot.  *Id.* at 20, App. 43.

Michael initially was represented by counsel in the Ozaukee Action.  His counsel withdrew on August 20, 2010 and Michael defended the action *pro se* thereafter.  *Id.* at 114, ¶16.  After a two day trial the jury returned the Verdict.

The jury was instructed as follows regarding the slander of title questions

in the Verdict:

> Questions Nos. 1 through 8 of the Special Verdict
> Form ask you to decide whether Defendant violated
> §706.13(1) of the Wisconsin Statutes. Section
> 706.13(1) sets forth standards for a slander of title
> action and states:
>
> Any person who submits for … recording, any lien,
> claim of lien, … or any other instrument relating to a
> security interest in or the title to real or personal
> property, and who knows or should have known that
> the contents or any part of the contents of the
> instrument are false, a sham or frivolous, is liable in
> tort to any person interested in the property whose
> title is thereby impaired, for punitive damages of
> $1,000 plus any actual damages caused by the filing,
> entering or recording.
>
> If Michael Gerard directed his attorney to record the
> Memorandum of Interest in Real Estate against Lot 3,
> then the law states Michael Gerard caused the
> recording of the Memorandum against Lot 3.
>
> If Michael Gerard knew, or should have known, that
> any part of the Memorandum of Interest in Real
> Estate, including any part of its Exhibit A, was false, a
> sham, or frivolous and Michael Gerard was aware, or
> should have been aware of it at the time he caused the
> recording of the memorandum, you should answer
> "Yes" to Question No. 2 of the Special Verdict Form.
> If you are not so satisfied, you should answer "No" to
> Question No. 2.

> Under certain circumstances, a person may have a
> conditional privilege to publish statements concerning
> a title to real estate. However, the privilege does not
> protect a person if it is abused. For the conditional
> privilege to a slander of title claim to apply, Michael
> Gerard must have had a reasonable ground for
> believing the truth of the contents of the
> memorandum, and the contents of the memorandum
> must have been reasonably calculated to accomplish a
> privilege purpose. In this case Michael Gerard claims
> the contents of the memorandum are conditionally
> privileged because he claims an interest in Lot 3 to
> protect. An abuse of Michael Gerard's privilege
> occurred if he at the time of filing the memorandum
> or at any time thereafter knew that any of the contents
> were false or filed the memorandum in reckless
> disregard as to the truth or falsity of the contents of
> the memorandum.

R.1-3 at 47-48, App. 36-37.

The Verdict contains the following questions and answers that are

pertinent to this appeal:

> 1. Did Michael Gerard cause the recording of the
>    Memorandum of Interest in Real Estate against Lot 3 with
>    the Ozaukee County Register of Deeds Office (hereinafter
>    "Memorandum")?
>
>        Answer: Yes.
>
> 2. Answer this question only if you answered "Yes" to
>    Question No. 1: Did Michael Gerard know, or should have
>    known, the contents, or a part of the contents, of the
>    Memorandum were false, a sham, or frivolous?
>
>        Answer: Yes.

3.  Answer this question only if you answered "Yes" to
    Question No. 2:  Did Michael Gerard have a reasonable
    ground for believing the truth of all of the contents of the
    memorandum?

    Answer:  No.

7.  Answer this question only if you answered "No" to Question
    No. 6: Kevin Gerard and Margaret Gerard deprived of a
    market which would   have been available to them if the
    Memorandum had not been recorded?

    Answer: Yes.

R.1-1 at 45-46, App. 38-39.

Michael filed a Chapter 11 case and Kevin and Margaret filed an

adversary action against Michael alleging that the judgment debt owed to them

is non-dischargeable under 11 U.S.C. §523 (a) (6).  R.1-1 at 7-39.  Kevin and

Margaret subsequently filed a summary judgment motion.  Michael argued in

opposition to the motion that the jury was not asked to determine and did not

determine issues of fact germane to the required elements of a claim under

§523 (a) (6).  R.1-3 at 9-16.  Michael also filed a Declaration in which he

averred that based on the Agreement and statements made to him by Kevin, at

all times prior to and during the trial of the Ozaukee Action he believed he

possessed an equitable interest in the Grafton Lot.  He further averred that his

intent in recording the Memorandum was to protect the equitable interest he

believed he possessed.  *Id.* at 82-83, App. 40-41.

8

On November 15, 2012 the Bankruptcy Court issued a written decision granting the summary judgment motion. *Id.* at 109-19, App. 22-32. On the same day the Bankruptcy Court entered an order for judgment declaring the Ozaukee Action judgment non-dischargeable under §523 (a) (6). R.1-2 at 160-61. In its written decision the Bankruptcy Court concluded that the jury in the Ozaukee Action made findings of fact that satisfied the required elements of the claim under §523 (a) (6). R.1-3 at 115, App. 28.

The Bankruptcy Court concluded that the jury's "answer to question 2 confirms that Michael intended to cause injury by *knowingly* filing a 'false, sham or frivolous' document in violation of the statute, and the answer to question no. 7 demonstrates that the jury found that Michael's calculated act was a direct and material cause of Kevin's and Margaret's injury." *Id.*, at 116-17, App. 29-30. Based on the jury's "No" response to Question No. 3 (whether Michael had a reasonable ground for believing the truth of all of the contents of the Memorandum), and the jury instruction that pertains to that question, the Bankruptcy Court held that the "the jury's rejection of Michael's claim of privilege negates his claim that he filed the Memorandum of Interest to protect his ownership interest or innocent third parties. The jury concluded that he intentionally recorded the Memorandum knowing that the contents were false." *Id.* at 117, App. 30.

Michael timely appealed to the District Court and the District Court affirmed the Bankruptcy Court decision.  R. 6, App. 2-21.  The District Court concluded that the issues of willfulness and malice had been established based on the District Court's conclusion that in "rejecting the conditional privilege, the jury found that Michael - a doctor and a lawyer - had no legal justification to file the Memorandum with attached Agreement and, at a minimum, knew that injury was highly likely to result from the act." *Id.*, App. 19.

## Summary of Argument

The judgments of the lower courts should be reversed because the findings in the Verdict and the summary judgment record do not establish the required findings for a claim under 11 U.S.C. §523 (a) (6).  Neither the Verdict nor the summary judgment record establish that the jury in the Ozaukee Action necessarily determined that Michael recorded the Memorandum knowing he had no legal justification to do so and that he either acted with intent to cause injury to Kevin and Margaret or with knowledge that the recording of the Memorandum was substantially certain to cause injury to Kevin and Margaret. In addition, no such findings were essential to the Verdict.

*Argument*

I.     *The lower courts failed to properly apply Wisconsin issue preclusion law to the Verdict and summary judgment record.*

Under Wisconsin law, a state court judgment's preclusive effect is determined by whether issue preclusion can, as a matter of law, be applied and whether application of issue preclusion would be fundamentally fair.  *Michelle T. by Sumpter v. Crozier*, 173 Wis. 2d 681, 698, 495 N.W.2d 327 (Wis. 1993). A court must consider whether the issue was actually litigated and determined by a valid judgment in a previous action and whether the determination was essential to the judgment."  *Landess v. Schmidt*, 115 Wis. 2d 186, 197, 340 N.W.2d 213, 219 (Ct. App. 1983), citing Restatement (Second) of Judgments §27 (1982).

In *Kawaauhua v. Geiger*, 523 U.S. 57, 61 (1998), the United States Supreme Court defined "willful" as an act done with actual intent to cause injury as opposed to an intentional act that causes injuries.  In *Jendusa-Nicolai v. Larsen*, 677 F.3d 320, 324 (7th Cir. 2012), this court held that a "willful and malicious injury, precluding discharge in bankruptcy of the debt created by the injury, is one that the injurer inflicted *knowing* he had no legal justification and either desiring to inflict the injury or *knowing* it was highly likely to result from his act (emphasis added)."

Under the above authorities, for the Verdict to constitute issue preclusion

in the adversary action, at a minimum the Verdict must set forth findings by the jury establishing that: (a) Michael recorded the Memorandum knowing he had no legal justification to do so; (b) he acted either with intent to cause injury to Kevin and Margaret or with knowledge that the recording of the Memorandum was highly likely to cause injury to Kevin and Margaret; and (c) the findings must be essential to the Verdict.  Any reasonable doubt as to what was decided in the prior action should be resolved against Kevin and Margaret.  *Honkanen v. Hopper,* 446 B.R. 373, 382 (B.A.P. 9th Cir. 2011).

As demonstrated in the argument that follows, the judgments of the lower courts should be reversed because each court's judgment relies on presumed findings of fact that are not stated anywhere in the Verdict, and none of the presumed findings of fact were essential to the Verdict answers.

> A. *Neither the record nor any findings in the Verdict establish that the jury either addressed or necessarily determined that Michael knew he had no legal justification to record the Memorandum and any such finding was not essential to the Verdict.*

Neither the record nor any findings in the Verdict establish that the jury either addressed or necessarily determined that Michael recorded the Memorandum *knowing* he had no legal justification to do so and any such finding, in any event, was not essential to the Verdict.

The finding that comes closest to addressing this issue is the "No" answer to Question No. 3: Did Michael have a reasonable ground for believing the truth

of all of the contents of the Memorandum?  The lower courts concluded that by answering "No" to Question No. 3, the jury expressly rejected Michael's claim of privilege and they construed the answer to equate to a finding that Michael recorded the Memorandum without just cause or excuse.    R.1-3 at 117, App. 30; R. 6 at 18, App. 19.

While Michael does not dispute the jury by its answer to Question No. 3 found that he recorded the Memorandum without legal justification, it does not follow from that finding that the jury addressed, much less necessarily determined, that Michael *knew* he had no legal justification to record the Memorandum, the finding required under *Jendusa-Nicolai*.  Further, even if the jury had found that Michael knew he had no legal justification to record the Memorandum, that finding would not be entitled to preclusive effect because it was not essential to the Verdict.

In answering Verdict Question No. 3 the jury was not required to determine whether Michael subjectively believed he had legal cause to file the Memorandum.  Question No. 3 only required the jury to determine whether Michael had reasonable grounds to believe the truth of all of the contents of the Memorandum.  That is an objective, negligence type standard.  Since the jury was not required to determine Michael's subjective state of mind in answering Question No. 3, the jury did not necessarily determine that Michael *knew* he had

no legal justification to record the Memorandum and even if it had made such a finding, the finding would not be entitled to preclusive effect because it was not essential to the Verdict.

This case is factually and legally analogous to *Wheeler v. Laudani*, 783 F.2d 610 (6th Cir. 1986), cited approvingly in *Jendusa-Nicolai*. In *Wheeler*, the debtor, pre-petition, was found liable for publishing a libelous document. The pre-petition libel complaint alleged the debtor published the libelous document either knowing that the contents were false or in reckless disregard of the truth of the contents. The judgment creditor sued the debtor in bankruptcy to deny discharge of its libel judgment under §523 (a) (6). The bankruptcy court granted the creditor summary judgment holding that the libel judgment necessarily established that the debtor acted willfully and maliciously, and the district court affirmed.

Noting that reckless disregard for truth is insufficient to establish a claim under §523 (a) (6), and that it was impossible to determine from the general verdict the specific basis for the finding of libel, the Sixth Circuit held that an issue of fact existed that rendered summary judgment inappropriate. 782 F.2d at 615. As in *Wheeler*, since the jury's finding that Michael did not have reasonable grounds to believe the truth of all of the contents of the Memorandum could have been based on negligence, reckless disregard for the

14

truth of the Memorandum, or knowledge Michael obtained after recording the Memorandum, it is impossible to determine from the answer to Verdict Question No. 3 whether the jury necessarily concluded that Michael knew he was not privileged to record the Memorandum at the time he recorded it.  Since reasonable doubt exists as to whether the jury necessarily found that Michael knew he was not legally justified to record the Memorandum at the time he recorded it and any such finding was not essential to the Verdict, summary judgment as to that element of the §523 (a) (6) claim was inappropriate.

> **B.** *Neither the record nor any findings in the Verdict establish that the jury either addressed or necessarily determined that Michael recorded the Memorandum desiring to inflict injury on Kevin and Margaret and any such finding was not essential to the Verdict.*

Michael claims his intent in filing the Memorandum was to protect his equitable and beneficial interest in the Grafton Lot.  R.1-3 at p.83, ¶6, App. 41. Neither the record nor any findings in the Verdict establish that the jury either addressed or necessarily found that Michael acted with intent to inflict injury on Kevin and Margaret, and any such finding was not essential to the Verdict. None of the Verdict questions required that the jury conclude that Michael acted with intent to cause injury as a prerequisite for answering the questions.

In its decision, the Bankruptcy Court concluded that the jury's response to Question No.2 (whether Michael knew, or should have known, that the contents, or a part of the contents, of the Memorandum were false, a sham, or

frivolous) confirms that Michael intended to cause injury by knowingly filing a false, sham or frivolous document in violation of the statute. R. 1-3 at 116-17, App. 29-30. There are multiple errors in the Bankruptcy Court's conclusion.

First and foremost Question No. 2 did not require the jury to necessarily determine whether Michael knowingly filed a false, sham or frivolous document. The question permitted the jury to answer "yes" if it concluded that Michael *should have known* that the contents, or a part of the contents, were false, a sham or frivolous. "Should have known" and "knowingly" are not synonymous terms, and "should have known" entails an objective, negligence type inquiry.

Second, even if one assumes the jury concluded Michael filed the Memorandum knowing that a part of the contents were false, a sham or frivolous, such a finding would not *ipso facto* compel a conclusion that he filed the Memorandum with subjective intent to cause injury. Consistent with Kevin and Margaret's acknowledgment that Michael possessed at least a 5.27% interest in the Grafton Lot, the jury could have reasonably agreed with Michael's assertion that his intent in filing the Memorandum was not to cause injury, but instead to protect his equitable and beneficial interest in the Grafton Lot.

Since it is impossible to determine whether the jury necessarily concluded that Michael acted with intent to cause injury and any such finding was not essential to the Verdict, summary judgment based on the response to Question No. 2 was inappropriate.

> C. *Neither the record nor any findings in the Verdict establish that the jury either addressed or necessarily determined that Michael recorded the Memorandum knowing that it was highly likely to result in injury to Kevin and Margaret and any such finding was not essential to the Verdict.*

Neither the record nor any findings in the Verdict support the District Court's conclusion that the jury found that Michael, at a minimum, knew that injury was highly likely to result from the recording of the Memorandum.  No such finding appears in the Verdict and nothing in the jury instructions required the jury to either consider or necessarily make that finding. Since the jury was not required to determine whether Michael knew that injury was highly likely to result from the recording of the Memorandum, it is impossible to determine whether the jury in fact made any such finding and any such finding was not essential to the Verdict.  The District Court erred in presuming such a finding was made by the jury and in giving preclusive effect to the presumed finding.  Its judgment, accordingly, should be reversed.

II.   *The lower courts failed to properly apply the summary judgment procedure.*

The judgments of the lower courts should also be reversed because the courts failed to properly apply the summary judgment procedure. Each court failed to construe the record in a light most favorable to Michael and ignored issues of fact.

A.   *The lower courts failed to review the record and all reasonable inferences arising therefrom in a light most favorable to Michael.*

As previously noted, on a motion for summary judgment, the reviewing court is required to construe the record and all reasonable inferences arising therefrom in a light most favorable to Michael. *Testerman*, 98 F.3d at 301. If the material presented is subject to conflicting interpretations or if reasonable people might differ as to its significance, it is improper to grant summary judgment. *Grams v. Boss*, 97 Wis. 2d. 332, 339, 294 N.W.2d 473, 477 (Wis. 1980). The lower courts failed to apply this standard of review in analyzing the summary judgment motion.

For example, the jury's answer to Verdict Question No. 2 could be based on one of two findings by the jury: (a) Michael knew the contents, or a part of the contents of the Memorandum was false, a sham or frivolous; or (b) Michael should have known the contents, or a part of the contents of the Memorandum was false, a sham or frivolous. Instead of adopting alternative (b), the

interpretation that favored Michael, the lower courts adopted alternative (a), the interpretation that favored Kevin and Margaret.

Similarly, with respect to the issue of whether Michael knew he was not legally justified to record the Memorandum, it could be reasonably inferred given the acknowledgment in the partition claim that Michael possessed at least Michael's assertion that his intent in filing the Memorandum was to protect his acknowledged interest in the Grafton Lot and that he subjectively believed he was legally privileged to record the Memorandum.  Indeed, no slander of title would have occurred had the Memorandum only stated that Michael possessed an equitable and beneficial interest in the Grafton Lot because that statement was true and conceded by Kevin and Margaret in the amended complaint they filed.  R.1-1 at 20, App. 43.

Based on the same acknowledged interest in the Grafton Lot, the jury could have also reasonably concluded that Michael neither acted with intent to cause injury nor with knowledge that an injury was highly likely to result from the recording of the Memorandum.  Instead of adopting these favorable inferences, the lower courts construed the Verdict and record in a light most favorable to Kevin and Margaret, and read into the Verdict findings that the jury was neither asked to make nor was required to make.  In doing so, the lower courts failed to properly apply the summary judgment procedure and their

judgments should be reversed.

*B. Issues of material fact exist that preclude summary judgment.*

The judgments should also be reversed because issues of fact exist that rendered summary judgment inappropriate. The issues of fact include whether and to what extent the jury considered or necessarily made any determinations germane to the §523 (a) (6) claim.

*Conclusion*

For the reasons set forth herein, Michael respectfully requests that this court reverse the judgments of the lower courts and remand this action to the Bankruptcy Court for further proceedings in the adversary action.

Dated at Milwaukee, Wisconsin this August 28, 2014.

Respectfully Submitted,

By: /s/ Michael P. Dunn
     Michael P. Dunn

Kerkman & Dunn

P.O. Address:

757 N. Broadway, Suite 300
Milwaukee, WI 53202
Phone: 414.277.8200
Facsimile: 414.277.0100
Email: mdunn@kerkmandunn.com

## CERTIFICATE OF COMPLIANCE - BRIEF

This brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7) and contains 4,482 words.

By: */s/ Michael P. Dunn*
    Michael P. Dunn

Kerkman & Dunn
Attorneys for Michael J. Gerard

## CERTIFICATE OF COMPLIANCE - APPENDIX

All materials required by Cir. R. 30(a) and 30(b) are included in the appendix to this brief.

By: */s/ Michael P. Dunn*
    Michael P. Dunn

Kerkman & Dunn
Attorneys for Michael J. Gerard

Case No. 14-1496

## UNITED STATES COURT OF APPEALS
## FOR THE SEVENTH CIRCUIT

---

**KEVIN GERARD and MARGARET GERARD,**

      **Plaintiff-Appellees-Appellees,**

**v.**                          **Case No. 14-1496**

**MICHAEL J. GERARD**

      **Defendant-Appellant-Appellant.**

---

## ON APPEAL FROM THE UNITED STATES DISTRICT COURT, EASTERN DISTRICT OF WISCONSIN, THE HONORABLE CHARLES N. CLEVERT PRESIDING, E.D. WIS. CASE NO. 13-CV-114

---

## APPENDIX OF APPELLANT, MICHAEL J. GERARD

---

Michael P. Dunn

Kerkman & Dunn
Attorneys for Michael J. Gerard
757 N. Broadway, Suite 300
Milwaukee, WI 53202
414-277-8515
414-277-0100 (fax)
mdunn@kerkmandunn.com

# TABLE OF CONTENTS

District Court Judgment · · · App. 1

District Court Decision · · · App. 2

Bankruptcy Court Decision · · · App. 22

Memorandum of Interest in Real Estate · · · App. 33

Jury Instructions – Slander of Title · · · App. 36

Special Verdict · · · App. 38

Declaration of Michael J. Gerard · · · App. 40

Excerpt of Amended Complaint – Partition Claim · · · App. 42

Rev. 5/85) Judgment in a Civil Case ©

# United States District Court

## EASTERN DISTRICT OF WISCONSIN

MICHAEL J. GERARD,

        Appellant,

v.

**JUDGMENT IN A CIVIL CASE**
Case No. 13-C-0114

KEVIN P. GERARD,
MARGARET M. GERARD,

        Appellees.

---

    This action came before the court, the issues have been decided and a decision

has been rendered. Now, therefore,

    IT IS ORDERED AND ADJUDGED that the decision of the bankruptcy court is

affirmed and this case is dismissed.

APPROVED:        s/ C.N. CLEVERT, JR.
                 C.N. CLEVERT, JR.
                 U.S. District Judge

                                    JON W. SANFILIPPO
                                    Clerk

        2/5/2014
        Date

                                      s/ C. Fehrenbach
                                      (By) Deputy Clerk

Case 2:13-cv-00114-CNC   Filed 02/05/14   Page 1 of 1   Document 7

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WISCONSIN

---

MICHAEL J. GERARD,

        Appellant,

v.                                         Case No. 13-C-0114

KEVIN P. GERARD,
MARGARET M. GERARD,

        Appellees.

---

### ORDER AFFIRMING BANKRUPTCY COURT
### AND DISMISSING APPEAL

This appeal arises from an adversary proceeding in which Kevin and Margaret Gerard sought to determine the dischargeability of a debt under 11 U.S.C. § 523(a)(6) that Michael Gerard, the debtor, owed Kevin and Margaret Gerard pursuant to a state court judgment.[1] The underlying dispute dates back to 2007 when Michael submitted an offer to purchase a lot on Lake Michigan in the Town of Grafton. He turned to his brother and sister-law, Kevin and Margaret, for assistance with the financing. Afterward, Kevin and Margaret purchased the property. Circumstances changed and Kevin began to search for another buyer. In 2009, Kevin learned that Michael had filed a Memorandum of Interest with the Ozaukee County Register of Deeds in September of 2008 claiming "an equitable and beneficial interest" in the property. Unable to sell the property, Kevin and Margaret filed suit in Ozaukee Count Circuit Court against Michael alleging breach of contract, slander of title and seeking a declaration of interest/quiet title and partition. A jury awarded

---

[1]For the sake of clarity, the court will omit the last names of the parties throughout the brief. Hereinafter, the parties shall be referred to as Kevin, Margaret and Michael.

Case 2:13-cv-00114-CNC  Filed 02/05/14  Page 1 of 20  Document 6

App. 2

Kevin and Margaret damages of $281,000, which included a $1,000 statutory award of punitive damages. After Michael filed a voluntary petition under Chapter 11 of the United States Bankruptcy Code, Kevin and Margaret filed an adversary proceeding to determine nondischargeability of the debt pursuant to 11 U.S.C. § 523(a)(6). Case No. 12-21108-svk; Case No. 12-02291-svk. Judge Kelley granted Kevin and Margaret's summary judgment motion finding that $281,000 judgment was the result of "willful and malicious injury" by Michael and, therefore, nondischargeable under 11 U.S.C. § 523(a)(6).

This court has jurisdiction over Michael's appeal pursuant to 28 U.S.C. § 158(a)(1) and reviews the bankruptcy court's grant of summary judgment de novo. *Dick v. Conseco, Inc.*, 458 F.3d 573, 577 (7th Cir. 2006). Federal Rule of Bankruptcy Procedure 7056 provides that "Rule 56 F. R. Civ. P. applies in adversary proceedings...." Fed. R. Bankr. P. 7056(a). And under Federal Rule of Civil Procedure 56, summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "If a party moving for summary judgment has properly supported his motion, the burden shifts to the nonmoving party to come forward with specific facts showing that there is a genuine issue for trial." *Cincinnati Life Ins. Co. v. Beyrer*, 722 F.3d 939, 951 (7th Cir. 2013) (internal quotation omitted). On the other hand, the court's ruling regarding discovery is reviewed for abuse of discretion. *In re Salem*, 465 F.3d 767, 777-778 (7th Cir. 2006).

In addition to the citations to the record from the adversary proceeding, the following findings of fact were submitted by the parties on summary judgment and are undisputed. Notably, with the exception of paragraphs 14 and 24 of Kevin and Margaret's proposed

2

findings of fact, Michael did not dispute the proposed findings of fact.  As to those paragraphs, the court extracted its findings from the underlying source document.[2]

Kevin and Margaret are married, and Michael is Kevin's brother. (R. 1-1 at 111-117, PFOF ¶¶ 5, 6.) Michael received a law degree from Northern Illinois University and is a licensed medical doctor. (*Id.* at PFOF ¶ 7.)

In 2007, Michael was looking to purchase lakefront property to build a home. Michael had financing issues, and Kevin and Margaret agreed to help him with the financing. Ultimately, Kevin and Margaret purchased a lakefront lot in the Town of Grafton, Ozaukee County, with an agreement that Michael would make payments and ultimately buy the lot from Kevin and Margaret. (*Id.* at PFOF ¶ 8.) Disputes arose thereafter, and in 2008 Kevin and Margaret decided to sell the lot, informed Michael of their plan, and put up a "For Sale by Owner" sign. (*Id.* at PFOF ¶ 9.) On at least two occasions, Michael went to the property and destroyed the "For Sale" sign. (*Id.* at PFOF ¶ 10.)

On September 26, 2008, Michael had his attorney, Robert A. Carroll, record a Memorandum of Interest in Real Estate with the Ozaukee County Register of Deeds against the lot. (*Id.* at PFOF ¶ 11.) The Memorandum of Interest stated as follows:

> Please take notice that by reason of a certain written contract dated October 12, 2007, between the undersigned MICHAEL JAMES GERARD, party of the first part, and KEVIN P. GERARD and MARGARET M. GERARD, husband and wife, parties of the second part (the "Contract"), on the 16th day of November, 2007, the undersigned party of the first part acquired an equitable

---

[2] Complicating this court's review was the fact that the record from the bankruptcy court was scanned upside down and out of sequence. The court reviewed each page in the record and asked the bankruptcy court to correct the upside down filings.  Ordinarily the court would cite to the pagination of the original document as required by The Bluebook. However, the record in this case makes finding a document by that page number extremely difficult. For consistency in issuing this decision, the court has used the page number at the bottom of the page that was generated when the record was created.  Hence, page 1 of the jury trial transcript is actually R. 1-2 at 105.

3

and beneficial interest in the following property (the "Property"), in Ozaukee
County, Wisconsin:

[Description of Property]

A copy of the pertinent portion of the contract is attached hereto as Exhibit
A. Copies of the underlying Residential Offer to Purchase, Counter-Offers
1&2, and Amendment(s) referred to in the Contract that were originally
signed by party of the first part, but which were assigned to parties of the
second part pursuant to the Contract are not attached hereto. By virtue of
the Contract and pursuant to all terms, conditions and provisions of it, when
title to the Property was conveyed to parties of the second part by a certain
Warranty Deed, dated November 16, 2007 and recorded in the office of the
Register of Deeds of Ozaukee County, Wisconsin on November 27, 2007 as
Document No. 0873933, parties of the second part have acquired title for
convenience only and hold title for the benefit of party of the first part.

(R. 1-1 at 42.) Michael signed the Memorandum of Interest.

On October 23, 2009, Kevin and Margaret commenced an action against Michael
in the Ozaukee County Circuit Court, Case No. 95-C-865. An amended complaint was
filed July 23, 2010. (*Id.* at PFOF ¶ 12.) Kevin and Margaret alleged declaration of
interest/quiet title, slander of title, partition, and breach of contract. (*Id.* at PFOF ¶ 13; R.
1-1 at 20.) Specifically, paragraph 39 of the amended complaint alleged that Michael
"knew or should have known that the contents of the Notice of Equity Interest are false, a
sham or frivolous." (R. 1-1 at 19.) In addition, the partition claim alleged that Kevin and
Margaret had a 94.73% interest in the lot whereas Michael had a 5.27% interest in the lot.
(R. 1-1 at 20.) The "Wherefore" Clause sought punitive damages in the amount of $1,000
and actual damages regarding the second cause of action for slander of title. (R. 1-1 at
21.)

Michael answered the Ozaukee County amended complaint, asserting eight
affirmative defenses and five counterclaims. (R. 1-1 at 111-117, PFOF ¶ 15.) He initially

appeared by counsel, but, on August 20, 2010, counsel withdrew and Michael proceeded pro se. (*Id.* at PFOF ¶ 16.) Michael participated in all aspects of the pretrial proceedings, including discovery, court conferences and hearings, and presented and opposed motions. (*Id.* at 17.)

During the course of the Ozaukee County action, Kevin and Margaret filed a motion for summary judgment to dismiss Michael's counterclaims. The court granted the motion before sua sponte reversing and setting the matter for a jury trial. (*Id.* at 18.) On October 3-4, 2011, the case was tried to a twelve-person jury with Judge Sandy Williams presiding. Michael fully participated in the trial, made an opening statement and closing argument, presented evidence and cross-examined witnesses. He submitted his own proposed verdict form and jury instructions, and was involved in the jury instruction conference at which time the special verdict form and the jury instructions were determined by the court. (*Id.* at 19.)

During the trial, Michael testified that it was his theory that Kevin secretly wanted to live on the property someday and that Kevin brought the lawsuit to clear the title. On cross-examination, Michael explained that Kevin perceived this as a "game."

Q     In your view this is all purely a game?

A     Yeah. Because there's a lien on it so he knows no matter how much he drops the price, no one's going to put in an offer as long as there's a lien on it. So he can lower the price and make it look like he's trying to sell the property, but he knows no one's going to put an offer as long as the title is clouded so you can't really give it much weight.

Q     And that's because you slapped this on the title, right?

A     Yeah. That's right.

5

(Id. at PFOF ¶ 20; Doc. 1-2 at 559.)

The court instructed the jury on the slander of title claim as follows:

Question Nos. 1 through 8 fo the Special Verdict Form ask you to decide whether Defendant violated § 706.13(1) of the Wisconsin Statutes. Section 706.13(1) sets forth standards for a slander of title action and states:

Any person who submits for ... recording, any lien, claim of lien, ... or any other instrument relating to a security interest in or the title to real or personal property, and who knows or should have known that the contents or any part of the contents of the instrument are false, a sham or frivolous, is liable in tort to any person interested in the property whose title is thereby impaired, for punitive damages of $1,000 plus any actual damages caused by the filing, entering or record.

....

If Michael Gerard knew, or should have known, that any part of the Memorandum of Interest in Real Estate, including any party of its Exhibit A, was false, a sham, or frivolous, he is liable to Plaintiffs. If a preponderance of the evidence establishes any part of the Memorandum is false, a sham, or frivolous and Micahel Gerard was aware or should have been aware, of it at the time he caused the recording of the Memorandum, you should answer "Yes" to Question No. 2 of the Special Verdict Form. If you are not so satisfied, you should answer "No" to Question No. 2.

Under certain circumstances, a person may have a conditional privilege to publish statements concerning title to real estate. However, the privilege does not protect a person if it is abused. For the conditional privilege defense to a slander of title claim to apply, Michael Gerard must have had a reasonable ground for believing the truth of the contents of the memorandum, and the contents of the memorandum must have been reasonably calculated to accomplish a privilege purpose. In this case Michael Gerard claims the contents of the memorandum are conditionally privileged because he claims an interest in Lot 3 to protect. An abuse of Michael Gerard's privilege occurred if he at the time of the filing the memorandum or any time thereafter knew that any of the contents were false or filed the memorandum in reckless disregard as to the truth or falsity of the contents of the memorandum.

(R. 1-2 at 27-28.)

The jury returned the following special verdict in favor of Kevin and Margaret:

A.    Slander of Title

6

1.    Did Michael Gerard cause the recording of the Memorandum of Interest in Real Estate against Lot 3 with the Ozaukee County Register of Deeds Office (hereinafter "Memorandum")?
      ANSWER (Yes or No):    Yes

2.    Answer this question only if you answered "Yes" to Question No. 1: Did Michael Gerard know, or should he have known, the contents, or a part of the contents, of the Memorandum were false, a sham, or frivolous?
      ANSWER (Yes or No):    Yes

3.    Answer this question only if you answered "yes" to Question No. 2: Did Michael Gerard have a reasonable ground for believing the truth of all of the contents of the memorandum?
      ANSWER (Yes or No):    No

4.    Answer this question only if you answered "Yes" to Question No. 3: Were all of the contents of the memorandum reasonably calculated by Michael Gerard to accomplish a privileged purpose?
      ANSWER (Yes or No): _____

5.    Answer this question only if you answered "yes" to Question No. 4: At any time, did Michael Gerard abuse the privilege when he filed and maintained the filing of the memorandum?
      ANSWER (Yes or No): _____

6.    Answer this question only if you answered "Yes" to Question No. 2: Is it a practical possibility for Kevin Gerard and Margaret Gerard to show specific losses from individual potential purchasers?
      ANSWER (Yes or No):    No

7.    Answer this question only if you answered "No" to Question No. 6: Were Kevin Gerard and Margaret Gerard deprived of a market which would have been available to them if the Memorandum had not been recorded?
      ANSWER (Yes or No):    Yes

8.    Answer this question only if you answered "YES" to Question No. 2: Did Kevin Gerard and Margaret Gerard show specific losses from individual potential purchasers?
      ANSWER (Yes or No):    Yes

B.    Breach of Contract

9.    Did Kevin Gerard and Margaret Gerard have an agreement with Michael Gerard?
      ANSWER (Yes or No):    Yes

7

10. Answer this question only if you answered "Yes" to Question No. 9: Did Michael Gerard breach his agreement with Kevin Gerard and Margaret Gerard regarding his reimbursement of all of Plaintiffs' out-of-pocket costs?
ANSWER (Yes or No):    Yes

11. Answer this question only if you answered "Yes" to Question No. 9: Did Michael Gerard breach his agreement with Kevin Gerard and Margaret Gerard regarding purchasing Lot 3 from Plaintiff?
ANSWER (Yes or No):    Yes

12. Answer this question only if you answered "Yes" to Question No. 9: Did Michael Gerard breach his duty of good faith and fair dealing to Kevin Gerard and Margaret Gerard?
ANSWER (Yes or No):    Yes

13. Answer this question only if you answered "Yes" to Question No. 10, Question No. 11, or Question No. 12: Did Michael Gerard's breach of contract cause damage to Kevin Gerard and Margaret Gerard?
ANSWER (Yes or No):    Yes

C. Damages

14. Answer this question regardless of how you answered the previous questions: What is the amount of Kevin and Margaret Gerard's out-of-pocket expenses including without limitation, down payment, holding costs and costs of refinancing?
ANSWER:    $215,224.86

15. Answer this question regardless of how you answered the previous questions: What was the difference in the value of Lot 3 in September of 2008 versus the time of Trial?
ANSWER:    $ No Change

16. Answer this question regardless of how you answered the previous questions: What is the amount of damages suffered by Kevin and Margaret Gerard:
ANSWER:    $280,000

(R. 1-1 at 39-42.)

Michael continued to participate in the Ozaukee County action by filing a motion to

set aside verdict and order new trial and motion for judgment notwithstanding the verdict.

(Doc. 1-2 at 34-65.)  Simultaneously, Kevin and Margaret argued the entire $280,000

8

**App. 9**

awarded by the jury was not divisible between the two claims and was recoverable as damages for the slander of title claim. The trial court granted Kevin and Margaret's motion for entry of judgment and entered an order for judgment applicable to both claims. (Id. at PFOF ¶ 24.) In addition, the court denied Michael's motions to set aside verdict and order a new trial, for judgment notwithstanding the verdict, for leave to amend pleadings, and for stay of enforcement of judgment pending appeal. (R. 1-2 at 128-129.)

The order stated that Kevin and Margaret Gerard are awarded "$281,000, plus costs and disbursements allowed by §§ 814.01 and 814.04, Wis. Stats., to be determined by the clerk pursuant to § 814.10, Wis. Stats. An interlocutory Judgment may be entered forthwith pursuant to § 806.01(2), Wis. Stats." (R. 1-2 at 129.) The court indicated that it would decide plaintiffs' request for an award of attorney's fees "incurred in clearing the disparaged title" in a hearing on January 20, 2012, and that "this is not a final order for purposes of appeal, in light of the further proceedings required under paragraph 6." (R. 1-2 at 129.)

An interlocutory judgment was entered on December 9, 2011, consistent with the order for judgment. (R. 1-2 at 130.) The hearing to determine whether Kevin and Margaret were entitled to an additional award of attorney's fees caused by the slander of title was stayed once Michael filed a Chapter 11 proceeding. (Id. at PFOF ¶ 25.) Kevin and Margaret filed the adversary proceeding on April 30, 2012, to determine whether Michael's debt is nondischargeable under § 523(a)(6) of the Bankruptcy Code.

In the adversary proceeding, Michael served a discovery request on Kevin and Margaret and deposition subpoenas on representatives of TCF Bank. (Doc. 1-2 at 60-64, 85-87.) Michael's stated purpose of the discovery was to "ascertain whether Kevin

9

committed perjury in the Ozaukee Action when he testified that a representative of TCF Bank orally informed him that the bank was no longer willing to finance the purchase of the Grafton lot." (*Id.* at 189-90.)

Kevin and Margaret moved to quash the depositions and for a protective order suspending factual discovery pending the court's ruling on the pending motion for summary judgment. (Doc. 1-1 at 53.) The bankruptcy court conducted a hearing on July 20, 2012, and revised the summary judgment briefing schedule. (Doc. 1-1 at 90.) In addition, the bankruptcy court barred discovery pending the outcome of the September 25, 2012, summary judgment hearing. The court added as follows:

> This ruling does not preclude the Debtor from pursuing post-judgment remedies available to him in the Ozaukee County Circuit Court. The Debtor would not be required to file a Motion for Relief from Stay to pursue such remedies, and Kevin Gerard would not be required to file a Motion for Relief from Stay to respond to and defend any such actions taken by the Debtor.

(R. 1-1 at 91.)

In opposition to summary judgment, Michael argued that the jury was not asked to determine the required elements of a claim under § 523(a)(6), and that there were issues of fact with respect to (1) the apportionment of damages between the breach of contract and slander of title claim and (2) whether the Ozaukee Action was procured by perjured testimony from Kevin.

On November 15, 2013, the bankruptcy court issued a written decision granting Kevin and Margaret's summary judgment motion. On the issue of preclusion, the court found no dispute that the Ozaukee County action was final and that the parties were identical. Acknowledging that neither the amended complaint nor the special verdict used the terms willful or malicious, the court reasoned that labels are not a prerequisite for the

10

application of collateral estoppel. Ultimately, the court found that the Ozaukee County jury made findings that satisfied the required elements.

In reaching this decision, the court reviewed "the entire trial transcript, jury instructions, Special Verdict, post-trial Motions, and orders and judgments entered by the Ozaukee County Circuit Court." The court found that the answer to special verdict question 1 showed that Michael committed an intentional act by recording the Memorandum. The jury's Yes answer to questions 2 and 7 had to be considered in the context of the jury instructions and Wisconsin's slander of title statute. After considering the conflicting testimony by Michael and Kevin, the court concluded that the jury considered Michael's knowledge and intent in recording the Memorandum of Interest in Real Estate with the Ozaukee County Register of Deeds. The answer to question 2 confirmed that Michael intended to cause injury by knowingly filing a "false, sham or frivolous" document in violation of Wisconsin law and the answer to question 7 demonstrated that the Michael's "calculated act was a direct and material cause of Kevin and Margaret's injury." In addition, by answering no to question 3, the jury rejected Micahel's claim of privilege -- that he filed the Memorandum of Interest to protect his ownership interest or innocent third parties.

Citing the transcript and post-trial motions, the bankruptcy court also rejected Michael's argument that the jury could have found him liable for slander of title if an immaterial portion of the Memorandum of Interest was found to be false, a sham or frivolous. The court granted Kevin and Margaret's motion for summary judgment finding that the Ozaukee County Circuit Court's determination that the jury's damage award was indivisible and that the state court's judgment must be recognized. Finally, on the issue

11

of perjured testimony, the bankruptcy court ruled that "unless and until the Ozaukee County Circuit court or a Wisconsin appellate court accepts Michael's arguments about the alleged perjured testimony, those arguments do not create a disputed issue of fact" in federal court.

On appeal, Michael identified the following issues pursuant to B.R. 8006: (1) whether the bankruptcy court erred in granting summary judgment to Kevin and Margaret on the grounds of issue preclusion; (2) whether the bankruptcy court properly applied Wisconsin issue preclusion law; (3) whether the bankruptcy court erred in ruling that the materiality of the factual contention that the state court jury verdict was procured by perjured testimony by Kevin Gerard depends on whether the contention is first accepted by the Circuit Court of Ozaukee County or a Wisconsin appellate court; (4) whether the bankruptcy court abused its discretion in prohibiting discovery on the factual issue of whether the state court jury verdict was procured with perjured testimony by Kevin Gerard. In his brief, Michael reframes issues (1) and (3) as whether the special verdict rendered in Ozaukee County Circuit Court Case No. 2009CV00865 sets forth sufficient findings of fact to establish a prima facie claim under 11 U.S.C. § 523(a)(6) and whether any issues of material fact existed that rendered summary judgment improper.

Whether the bankruptcy court erred in granting summary judgment or misapplied Wisconsin preclusion law is subject to de novo review. Michael Gerard first argues that the jury's findings in the Ozaukee County Circuit Court case were insufficient to establish a prima face claim for relief under § 523(a)(6) inasmuch as the jury did not determine whether he had no legal justification for his actions or that he acted with intent to cause injury to Kevin and Margaret.

12

Section 523(a)(6) excepts from discharge any debt for willful and malicious injury by the debtor to another entity or to the property of another entity. 11 U.S.C. § 523(a)(6). Kevin and Margaret had the burden of proving their claim under § 523(a)(6) by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 291 (1991). To this end, Kevin and Margaret maintain that the court must recognize the preclusive effect of the Ozaukee Circuit Court judgment pursuant to the Full Faith and Credit Act. *See Dollie's Playhouse, Inc. v. Nable Excavating, Inc.*, 481 F.3d 998, 1000 (7th Cir. 2007). Under 28 U.S.C. § 1738, state court proceedings "shall have the same full faith and credit in every court within the United States ... as they have by law or usage in the courts of such State ... from which they are taken."

The state court judgment's preclusive effect is decided in accordance with state law. 28 U.S.C. § 1738; *Stephan v. Rocky Mountain Chocolate Factory, Inc.*, 136 F.3d 1134, 1136 (7th Cir. 1998). Collateral estoppel, or issue preclusion, prevents the relitigation of an issue previously decided in a judicial proceeding as long as the party against whom the prior decision was asserted enjoyed a full and fair opportunity to litigate that issue in the earlier proceeding. *Allen v. McCurry*, 449 U.S. 90, 94–95, 101 S. Ct. 411, 414–415, 66 L. Ed. 2d 308 (1980). In Wisconsin, a state court judgment's preclusive effect is determined by whether issue preclusion can, as a matter of law, be applied and whether the application of issue preclusion would be fundamentally fair. *Michelle T. by Sumpter v. Crozier*, 173 Wis. 2d 681, 698, 495 N.W. 2d 327 (Wis.1993).

First, the court considers whether "the issue ... was actually litigated and determined in the prior proceeding by a valid judgment in a previous action and whether the

13

determination was essential to the judgment." *Landess v. Schmidt*, 115 Wis. 2d 186, 197, 340 N.W.2d 213, 219 (Ct. App.1983) (citing Restatement (Second) of Judgments § 27 (1982)). Next, the court considers whether issue preclusion comports with principles of fundamental fairness. This is generally a discretionary decision, although some of the factors a court is to consider in determining fairness present a question of law. *Paige K.B. ex rel. Peterson v. Steven G.B.*, 226 Wis. 2d 210, 225, 594 N.W.2d 370 (1999). The factors that courts may consider when undertaking the second step of issue preclusion are: "(1) could the party against whom preclusion is sought, as a matter of law, have obtained review of the judgment; (2) is the question one of law that involves two distinct claims or intervening contextual shifts in the law; (3) do significant differences in the quality or extensiveness of proceedings between the two courts warrant relitigation of the issue; (4) have the burdens of persuasion shifted such that the party seeking preclusion had a lower burden of persuasion in the first trial than in the second; or (5) are matters of public policy and individual circumstances involved that would render the application of collateral estoppel to be fundamentally unfair, including inadequate opportunity or incentive to obtain a full and fair adjudication in the initial action?" *Michelle T. By Sumpter*, 173 Wis. 2d at 689.

Step one requires that the issue – willful and malicious injury to the property of another – was actually litigated and determined by the Ozaukee judgment and whether the determination was essential to the judgment. *See* 11 U.S.C. § 523(a)(6). The United States Supreme Court has clarified that "nondischargeability takes a deliberate or intentional injury" and "not merely an intentional or deliberate act that leads to an injury."

14

*Kawaauhau v. Geiger*, 523 U.S. 57, 61, 118 S. Ct. 974, 140 L. Ed. 2d 90 (1998). Injuries caused by intentional torts generally fall within the definition of "willful" because those torts usually require that the actor "intend the consequences" of his or her acts. *Id.* (Congress sought to limit § 523(a)(6) to only "willful and malicious" injuries that were intentionally caused). However, while most intentional torts fall within § 523(a)(6), some do not. *See Garoutte v. Damax*, 400 B.R. 208, 213 (Bankr. S.D. Ind. 2009)(denying summary judgment where the Indiana Court of Appeals suggested that the debtor had an excuse for the criminal conversion indicating it may not have been intentional or malicious.) Further, malice has been defined as the "conscious disregard of one's duties or without just cause or excuse." *In re Thirtyacre*, 36 F.3d 697, 700 (7th Cir. 1994). It does not require proof of ill-will or a specific intent to harm. *Id.*

As the Seventh Circuit acknowledged, "in the course of our research we have discovered to our surprise that courts are all over the lot in defining this phrase in section 523(a)(6)." *Jendusa–Nicolai v. Larsen*, 677 F.3d 320, 323 (7th Cir. 2012). Nevertheless, the court concluded that "... whatever the semantic confusion, we imagine that all courts would agree that a willful and malicious injury, precluding discharge in bankruptcy of the debt created by the injury, is one that the injurer inflicted knowing he had no legal justification and either desiring to inflict the injury, or knowing it was highly likely to result from his act." *Id.*, 677 F.3d at 324.

The Ozaukee County case went to the jury on an intentional tort – slander of title. As the jury was instructed, Wisconsin's slander of title law provides:

> any person who submits for filing, entering in the judgment and lien docket or recording, any lien, claim of lien, lis pendens, writ of attachment, financing

15

App. 16

> statement or any other instrument relating to a security interest in or the title
> to real or personal property, and who knows or should have known that the
> contents or any part of the contents of the instrument are false, a sham or
> frivolous, is liable in tort to any person interested in the property whose title
> is thereby impaired, for punitive damages of $1,000 plus any actual damages
> caused by the filing, entering or recording.

Wis. Stat. § 706.13(1). As such, the elements of statutory slander of title are "[a] knowingly

false, sham or frivolous claim of lien ... filed, documented or recorded which impairs title...."

*Kensington Dev. Corp. v. Israel*, 142 Wis. 2d 894, 902-903, 419 N.W.2d 241 (1988).

Michael is correct when he points out that the jury was not instructed on the words

"willful" and "malicious." Moreover, the jury was not specifically asked whether Michael

intended to cause injury. Nevertheless, these labels are not a prerequisite to apply

collateral estoppel. *See Ball v. A.O. Smith Corp.*, 451 F.3d 66, 70-71 (2d Cir. 2006).

Preclusion applies if the findings in the Ozaukee County action establish that Michael's

actions were willful and malicious.

In support of summary judgment, Michael filed a declaration asserting his belief that

he had an equitable ownership interest in the Grafton lot. However, his declaration cannot

create a genuine issue of material fact if it conflicts with the jury's findings. The purpose

of preclusion is to prevent revisiting the issues that the jury has considered and decided.

To this end, the jury was presented with two competing theories regarding the facts.

Kevin testified and presented evidence that the Agreement attached to the

Memorandum of Interest drafted by his father in response to a request from TCF Bank that

they provide a "business model." (R. 1-2 at 277.) However, nothing was done with that

Agreement because Kevin received a call from TCF Bank that it was "not interested in

doing the financing." (*Id.* at 280.) Kevin testified that he threw the Agreement away

16

because it no longer served a purpose as Michael was not getting the money to pay back Kevin for a down payment. (*Id.* at 281.) When shown the Memorandum of Interest and the Agreement at trial, Kevin testified that the Agreement was not a contract to be enforced and related solely to the request by TCF. (*Id.* at 317.)

Kevin purchased the lot but it soon became apparent that Michael's fiancé, who was pregnant, did not want to live in Grafton. (*Id.* at 298.) Kevin made the decision to sell after the mortgage was coming due and Michael was not proceeding with a construction loan. (*Id.* at 299, 305.) Kevin testified that he told Michael about his decision to sell, and that Michael removed the "For Sale" signs and never told Kevin that he filed the Memorandum of Interest on the property. (*Id.* at 315-316.)

In contrast, Michael testified that the problem was Kevin and Margaret's failure to apply for construction financing or a line of credit, and that he filed the Memorandum of Interest to protect his equity interest in the property. (*Id.* at 513-525.) He also testified that no matter how much Kevin reduced the price, no one would make an offer because the title was clouded. According to Michael, the whole purpose of the lien was to show that someone else has an interest in the lot. Throughout the trial, his defense was that he was simply protecting his interest and this defense was reflected in the jury instructions. (R. 1-3 at 89.1) ("In this case Michael Gerard claims the contents of the memorandum are conditionally privileged because he claims an interest in Lot 3 to protect.") Yet he conceded that he physically took down the "For Sale" sign. (*Id.* at 525.)

In that context, the jury considered the conflicting testimony and rejected the theory that Michael had a reasonable ground to believe the truth of the contents of the

17

Memorandum of Interest. The jury's answers to questions 1, 2 and 3 establish that Michael acted intentionally in recording the Memorandum of Interest and "knew or should have known that contents or part of the contents were false, a sham, or frivolous." The jury also found that Michael deprived Kevin and Margaret of a market that would have otherwise been available to them if the Memorandum had not been recorded. According to the instructions, the jury was to answer yes if the recording was a material cause of Kevin and Margaret's being deprived of the market. Moreover, the jury heard Michael, a doctor and a lawyer, testify that it was "all purely a game" because no matter how much the price is dropped no one would put an offer on the property as long as there is a lien on it. (R. 1-2 at 468.)

On this record, the issue of willfulness and malice has been established and cannot be revisited by another court. In rejecting the conditional privilege, the jury found that Michael – a doctor and a lawyer – had no legal justification to file the Memorandum with attached Agreement and, at a minimum, knew that injury was highly likely to result from the act. He testified that he knew that the property would not sell with the clouded title. Such findings are consistent with the application of issue preclusion in § 523(a)(6) proceedings arising out of slander of title and fraudulent instruments adjudications. *See In re Goldsberry*, 2011 WL 528958 (Bkrtcy. S.D. Ind. 2011) (unpublished); *In re Hetrick*, 379 B.R. 612, 621 (Bkrtcy. E.D. Va. 2007) (default judgment). They are also consistent with a judgment that included a statutory award of punitive damages.

Nevertheless, Michael asserts that the bankruptcy court failed to conduct second – prong of the preclusion analysis – the "equities-based, fundamental fairness analysis."

18

Because this court reviews the decision de novo, it may consider the record and arguments raised therein.

There is no dispute Michael could have, as a matter of law, sought leave to appeal the state court judgment or move for relief from judgment under Wis. Stat. § 806.07. He never sought leave to pursue an interlocutory appeal of the interlocutory judgment. Additionally, the burden of proof before the state court – preponderance of the evidence – is the same as required in this adversary proceeding. *Matter of Bero*, 110 F.3d 462, 465 (7th Cir. 1997) ("[T]o prove that a debt is nondischargeable, the creditor bears the burden of proof by a preponderance of the evidence."). Ultimately, there is no contextual shift in law or matters of public policy that would render the application of estoppel to be fundamentally unfair. Michael had a full and fair opportunity to litigate the issues that were decided in state court, notwithstanding his decision to proceed pro se.

Next, Michael maintains that the bankruptcy court failed to view the evidence in the light most favorable to the non-moving party. To this end, Michael contends that the facts were viewed in the light most favorable to Kevin and Margaret and that the $281,000 damage award applied to the breach of contract **and** slander of title claims. However, the state court granted Kevin and Margaret's post-verdict motion requesting a judgment for the full amount of the damages based on the damages available under Wis. Stat. § 706.13.

Finally, Michael asserts that he should have been given the opportunity to develop the factual record concerning his allegations of perjury by Kevin. He insists that he is not seeking to collaterally attack the judgment but submits that the state courts are not the proper venue to address the perjury claim because "there is no assurance the state courts

19

**App. 20**

would entertain a motion for relief from the judgment based on the perjury claim." This too fails because Michael raised (or attempted to raise) this issue during the Ozaukee trial and in the post-verdict motions.   Moreover, he cannot collaterally attack the interlocutory judgment of the Ozaukee County Circuit Court in this court.  The perjury issue is a matter within the province of the state courts, and, as it stands, the interlocutory judgment is presumptively valid. Now, therefore,

     IT IS ORDERED that the decision of the bankruptcy court is affirmed.

     IT IS FURTHER ORDERED that the appeal is dismissed with prejudice.

     Dated at Milwaukee, Wisconsin, this 5th day of February, 2014.

                       BY THE COURT

                       /s/ C.N. Clevert, Jr.
                       C.N. CLEVERT, JR.
                       U.S. DISTRICT JUDGE

20

UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| In re<br>Michael Gerard and<br>Nancey Gerard,<br>        Debtors. | Chapter 11<br><br>Case No. 12-21108-svk |
| Kevin Gerard and<br>Margaret Gerard,<br>        Plaintiffs,<br><br>v.<br><br>Michael J. Gerard,<br>        Defendant. | Adv. Proc. No. 12-2291 |

## MEMORANDUM DECISION ON THE PLAINTIFFS'
## MOTION FOR SUMMARY JUDGMENT

Kevin and Margaret Gerard filed this adversary proceeding contending that a state court judgment in their favor against Kevin's brother, Michael Gerard, is not dischargeable in Michael's bankruptcy. Kevin and Margaret filed a Motion for Summary Judgment that Michael opposed. After briefing and oral argument, the Court issues this Memorandum Decision.

Facts

This dispute involves a parcel of vacant land on Lake Michigan in the Town of Grafton, Ozaukee County, Wisconsin that the parties refer to as "Lot 3." In August 2007, Michael made an offer on Lot 3, but was unable or unwilling to complete the purchase on his own. Michael asked for Kevin's assistance, and they sought financing from TCF Bank. TCF Bank requested a written business plan for the purchase and development of Lot 3, and Michael and Kevin

App. 22

arranged for their father, an attorney, to draft an Agreement. Under the Agreement dated October 12, 2007 (the "October Agreement"), Kevin and his wife Margaret would fund the down payment, obtain a mortgage for the balance of the purchase price, and take title to Lot 3. Michael would make all of the payments on the mortgage, real estate taxes, and a construction loan for construction of a single family residence. Upon completion of construction, Kevin and Margaret would deed Lot 3 to Michael, in exchange for Michael's payment of their out-of-pocket costs relating to the purchase and an agreed-upon interest rate.

TCF Bank declined to complete the financing. According to Kevin, Michael agreed to destroy the October Agreement, and the parties entered into a new oral agreement. Under the oral agreement, Michael would assign the purchase contract to Kevin and Margaret who would purchase Lot 3 and hold it for one year. Michael would pay all the expenses for the year, and then Michael would purchase Lot 3 from Kevin and Margaret. Kevin and Margaret obtained financing from Ozaukee Bank in the form of a one-year note for $456,000 with interest at 5.995% per annum, and purchased Lot 3 on November 16, 2007. Michael contributed $5,250 to purchase Lot 3 and paid the holding costs between November 2007 and September 2008.

When Michael decided to get married, Kevin concluded that Michael was no longer interested in purchasing Lot 3, and Kevin decided to sell the property. In September 2008, Kevin sent e-mails and a letter to Michael offering to pay Michael $54,049.10 to reimburse Michael for all of the expenses Michael had paid. In a September 24, 2008 letter, Kevin told Michael not to tamper with Kevin's "For Sale" signs. Michael did not accept Kevin's offer, but on September 26, 2008 recorded a "Memorandum of Interest" with the Ozaukee County Register of Deeds. The Memorandum of Interest states that Kevin and Margaret acquired title to Lot 3 for convenience only and that they hold title for the benefit of Michael. The Memorandum provides

2

Case 2:13-cv-00114-CNC   Filed 02/01/13   Page 110 of 177   Document 1-3   110
Case 12-02291-svk   Doc 29   Filed 11/05/12   Page 2 of 11

App. 23

that "a copy of pertinent portion of the Contract is attached hereto as Exhibit A." Exhibit A consists of the October Agreement. Michael claims that by recording the Memorandum of Interest, he was merely putting potential purchasers on notice of his equitable ownership interest in Lot 3. Kevin learned of the Memorandum of Interest in 2009 when a potential buyer searched the land records and found it. Kevin maintains that Michael never told him about the recording of the Memorandum of Interest, and that the parties' oral agreement supersedes the October Agreement.

On October 23, 2009, Kevin and Margaret sued Michael in the Ozaukee County Circuit Court to quiet title on Lot 3. They asserted claims for slander of title and breach of contract. Michael appeared and defended himself in the Ozaukee County action. After a two-day trial, the twelve-person jury returned a verdict against Michael. In the slander of title portion of the Special Verdict, the jury concluded that Michael caused the recording of the Memorandum of Interest, and that he knew or should have known that the contents, or part of the contents, of the Memorandum were false, a sham, or frivolous. The jury also found that Michael did not have reasonable grounds for believing the truth of the Memorandum's contents and that the recording of the Memorandum deprived Kevin and Margaret of a market that would have been available to them if the Memorandum had not been recorded. As to the breach of contract claim, the jury found that Michael had an agreement with Kevin and Margaret to purchase Lot 3 from Kevin and Margaret and to reimburse their out-of-pocket costs, and that Michael breached that agreement. The jury determined that Kevin and Margaret suffered damages in the amount of $280,000, but the jury did not allocate the damages between the slander of title and breach of contract claims. The jury was not asked in the Special Verdict to award punitive damages to Kevin and Margaret, and it did not do so.

In Motions after the Verdict, the Court assessed $1,000 of punitive damages against Michael under Wis. Stat. § 706.13(1) and entered an Interlocutory Judgment on the Verdict on December 9, 2011 in the amount of $281,000. Kevin and Margaret filed a Motion to determine that the damages awarded by the jury were recoverable on the slander of title claim; Michael opposed this Motion. The filing of Michael's Chapter 11 petition stayed a hearing to determine whether Kevin and Margaret were entitled to an additional award of attorneys' fees.

Kevin and Margaret filed this adversary proceeding on April 30, 2012 and sought a determination that Michael's debt to Kevin and Margaret is nondischargeable under § 523(a)(6) of the Bankruptcy Code. That section provides that a discharge does not include a debt for "willful and malicious injury by the debtor to another entity or to the property of another entity." Kevin and Margaret filed a Motion for Summary Judgment, contending that the verdict in the Ozaukee County action should be given preclusive effect. Michael objected.

<u>Analysis</u>

Only a bankruptcy court can grant a discharge, and the bankruptcy court therefore has exclusive jurisdiction to determine the dischargeability of a debt based on fraud, willful and malicious conduct and the like. 11 U.S.C. § 523(c); *Stoll v. Conway*, 148 B.R. 881, 883 (Bankr. E.D. Wis. 1992). Although state court judgments on questions of fraud, willfulness, malice, and other issues may not bind a bankruptcy court in a dischargeability action, under certain conditions debtors will be collaterally estopped from re-litigating factual determinations made in connection with such judgments in the bankruptcy court. *See, e.g., Reeves v. Davis (In re Davis)*, 638 F.3d 549 (7th Cir. 2011) (factual finding that contract included a term was binding on bankruptcy court, but state court litigation did not include finding of debtor's intent). The Supreme Court has explained that: "Issue preclusion generally refers to the effect of a prior

4

judgment in foreclosing successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment, whether or not the issue arises on the same or a different claim." *New Hampshire v. Maine*, 532 U.S. 742, 748-49 (2001). In determining whether to give a Wisconsin state court judgment preclusive effect, this Court must apply Wisconsin law. *Worldwide Prosthetic Supply, Inc. v. Mikulsky (In re Mikulsky)*, 301 B.R. 726, 728 (Bankr. E.D. Wis. 2003). *Mikulsky* listed Wisconsin's four elements of issue preclusion: "(1) The prior judgment must be valid and final on its merits. (2) There must be an identity of issues. (3) There must be an identity or privity of parties. (4) The issues in the prior action must have been actually litigated and necessarily determined." *Id.* at 728-29. "The party asserting the doctrine has the burden of proving that all of the threshold requirements have been met. . . . To meet this burden, the moving party must have pinpointed the exact issues litigated in the prior action and introduced a record revealing the controlling facts." *Honkanen v. Hopper (In re Honkanen)*, 446 B.R. 373, 382 (B.A.P. 9th Cir. 2011) (explaining further that "[r]easonable doubts about what was decided in the prior action should be resolved against the party seeking to assert preclusion"). There is no dispute that the judgment in the Ozaukee County action is final and that the parties are identical, but Michael challenges Kevin and Margaret's claim that the issues are identical.

Michael argues that whether he acted willfully and maliciously was not at issue in the Ozaukee County action, and that the jury did not decide that he acted willfully and maliciously. He is correct that neither the Amended Complaint nor the jury's Special Verdict used the terms "willful" or "malicious," but the labels are not a prerequisite to apply collateral estoppel. *See Ball v. A.O. Smith Corp.*, 451 F.3d 66, 70 (2d Cir. 2006) ("Although Judge Melancon's opinion did not use the terms 'malicious' or 'malice,' his decision to award sanctions under § 1927 was

5

**App. 26**

affirmed by the Fifth Circuit, which has adopted standards for such an award requiring findings that are the equivalent of findings of malice."); *Mikulsky*, 301 B.R. at 729 (rejecting debtor's claim that jury verdict on misappropriation of trade secrets did not satisfy elements when jury answered "yes" to question of whether debtor's conduct was "outrageous"). If the facts found by the jury in the Ozaukee County action establish that Michael's actions were "willful and malicious" within the meaning of § 523(a)(6), then Michael will be precluded from challenging those findings in this adversary proceeding. *See Ball, supra; see also Klingman v. Levinson*, 831 F.2d 1292, 1296 (7th Cir. 1987) (because the consent agreement resolved the same issues that would be litigated in the bankruptcy case, collateral estoppel applied).

      The Supreme Court defined "willful" as an act done with the actual intent to cause injury, as opposed to an act done intentionally that causes injury. *Kawaauhau v. Geiger*, 523 U.S. 57, 61 (1998). "[T]he (a)(6) formulation triggers in the lawyer's mind the category 'intentional torts,' as distinguished from negligent or reckless torts. Intentional torts generally require that the actor intend 'the *consequences* of an act,' not simply the 'act itself.'" *Id.* The Seventh Circuit recently recognized that not all intentional torts meet the standard. *Jendusa-Nicolai v. Larsen*, 677 F.3d 320, 322 (7th Cir. 2012) (citing *Williams v. International Brotherhood of Electrical Workers Local 520*, 337 F.3d 504, 508 (5th Cir. 2003)) (knowing breach of contract); *Miller v. J.D. Abrams Inc. (In re Miller),* 156 F.3d 598, 603-04 (5th Cir. 1998) (misappropriation of proprietary information); *Wheeler v. Laudani*, 783 F.2d 610, 615 (6th Cir. 1986) (libel). The cases cited by the *Larsen* court are instructive: both *Williams* and *Miller* focus on the requirement that the debtor was not found to have been substantially certain that the debtor's conduct would injure the creditor. *Wheeler* examined the jury instructions and found that the libel verdict could have been based on the debtor's recklessness; the Sixth Circuit remanded the

6

**App. 27**

case for a determination of whether the jury verdict and judgment encompassed a finding that the debtor acted intentionally. After *Geiger* and *Larsen*, proof of willfulness requires: (1) an intentional or deliberate act; (2) that is either intended to cause injury or substantially certain to cause injury; (3) to a person or property. While it is a close case, the Court concludes that the jury in the Ozaukee County action made findings that satisfied these required elements.

In making this determination, the Court reviewed the entire trial transcript, jury instructions, Special Verdict, post-trial Motions, and orders and judgments entered by the Ozaukee County Circuit Court. Kevin claimed that after TCF Bank rejected the financing for Lot 3, the October Agreement was null and void and was supposed to be torn up. Kevin testified at length about the oral agreement that replaced the October Agreement, under which Kevin and Margaret would take over the purchase of Lot 3, but Michael would buy Lot 3 back within one year. According to Kevin, when Michael decided to marry Nancey, it was apparent that Michael no longer was interested in purchasing Lot 3, so Kevin decided to sell it. Kevin testified that Michael did not agree to the sale because he wanted more money than Kevin offered. When Kevin hired a realtor to market the property, the Memorandum of Interest was discovered, buyers were put off, and the Ozaukee County action ensued.

Michael testified that he was always interested in buying Lot 3, that the misunderstanding involved Kevin and Margaret's failure to apply for a construction loan, and that Nancey would have moved to Grafton. He stated that the primary purpose for recording the Memorandum of Interest was to protect his equity interest in the property after Kevin sent him nasty e-mails and started tearing up Michael's checks and returning them. Michael admitted under cross-examination that regardless of how low Kevin reduced the price, nobody would make an offer on the property because of the Memorandum of Interest that Michael recorded against the title.

7

**App. 28**

Kevin and Michael's accountings differed significantly as to the amounts paid by Michael and credited by Kevin.

In answer to Special Verdict question 1, whether Michael caused the recording of the Memorandum of Interest against Lot 3 with the Register of Deeds, the jury responded "Yes." This answer shows that Michael committed an intentional act by recording the Memorandum. The more difficult issue is whether the jury considered whether Michael recorded the Memorandum with the intent to cause harm or substantial certainty that it would cause harm. The jury answered "Yes" to questions 2 and 7, which asked whether Michael knew or should have known that the contents or part of the contents of the Memorandum were false, a sham, or frivolous, and whether Kevin and Margaret were deprived of a market for Lot 3 that would have been available to them if the Memorandum had not been recorded. In providing these answers, the jury would have considered the jury instructions, explaining that questions 1 through 8 asked the jury to decide if Michael violated Wisconsin's slander of title statute. The jury instructions quoted the pertinent portion of Wis. Stat. § 706.13(1) as follows:

> Any person who submits for . . . recording, any lien, claim of lien, . . . or any other instrument relating to a security interest in or the title to real or personal property, and who knows or should have known that the contents or any part of the contents of the instrument are false, a sham or frivolous, is liable in tort to any person interested in the property whose title is thereby impaired, for punitive damages of $1,000 plus any actual damages caused by the filing, entering or recording.

The instructions stated that if the evidence established that Michael's recording of the Memorandum was a material cause of Kevin and Margaret's being deprived of a market for Lot 3, then the jury should answer "yes" to question 7. In this context, after considering the conflicting testimony, by answering "Yes" to questions 2 and 7, it is apparent that the jury did consider Michael's knowledge and intent in recording the Memorandum. The answer to

8

App. 29

question 2 confirms that Michael intended to cause injury by *knowingly* filing a "false, sham or frivolous" document in violation of the statute, and the answer to question 7 demonstrates that the jury found that Michael's calculated act was a direct and material cause of Kevin and Margaret's injury.

Moreover, the jury said "No" to question 3 -- whether Michael had a reasonable ground for believing the truth of the contents of the Memorandum of Interest. The jury instruction related to this question is significant:

> Under certain circumstances, a person may have a conditional privilege to publish statements concerning a title to real estate. However, the privilege does not protect a person if abused. For the conditional privilege defense to a slander of title claim to apply, Michael Gerard must have had a reasonable ground for believing the truth of the contents of the memorandum, and the contents of the memorandum must have been reasonably calculated to accomplish a privilege (sic) purpose. In this case Michael Gerard claims the contents of the memorandum are conditionally privileged because he claims an interest in Lot 3 to protect. An abuse of Michael Gerard's privilege occurred if he at the time of filing the memorandum or any time thereafter knew that any of the contents were false or filed the memorandum in reckless disregard as to the truth or falsity of the contents of the memorandum.

After considering this instruction, the jury's rejection of Michael's claim of privilege negates his claim that he filed the Memorandum of Interest to protect his ownership interest or innocent third parties. The jury concluded that he intentionally recorded the Memorandum knowing that the contents were false. In addition to supporting the "willfulness" prong of § 523(a)(6), rejection of the privilege satisfies the "maliciousness" standard. In *Estate of Sustache v. Mathews (In re Mathews)*, 433 B.R. 732, 735 (Bankr. E.D. Wis. 2010), this Court noted that: "The Seventh Circuit Court of Appeals has stated that malice involves acting in 'conscious disregard of one's duties or without just cause or excuse.' *In re Thirtyacre*, 36 F.3d 697, 700 (7th Cir. 1994) (citing *Wheeler v. Laudani*, 783 F.2d 610, 615 (6th Cir. 1986))."

9

**App. 30**

*Mathews* involved the assertion of a self-defense claim in a § 523(a)(6) action and held that a valid self-defense claim negated the element of malice. In this case, the jury could have accepted Michael's version of events and afforded him the privilege of recording the Memorandum of Interest to protect his equitable interest in Lot 3, but the jury expressly rejected application of the privilege. The jury's rejection of the privilege equates to a finding that Michael recorded the Memorandum of Interest without just cause or excuse. Therefore, the jury in the Ozaukee County action considered and found the requisite elements of malice, and Michael should be precluded from claiming that he is not bound by the jury's findings in this adversary proceeding.

Michael claims that the jury could have found him liable for slander of title if an immaterial portion of the Memorandum of Interest was found to be false, a sham, or frivolous. That may be true, but review of the transcript and post-trial motions dispels the notion that the jury did so. Kevin testified that the October Agreement was null and void and was supposed to be torn up. Michael testified that in order to protect an innocent purchaser from buying the property subject to Michael's unrecorded equitable interest, Michael obtained a copy of the October Agreement from his father (who had drafted it a year earlier and still had a copy) and recorded it as the "contract." Nothing in the record suggests that the jury concluded that Michael was liable on a "technicality" such as failure to attach an Exhibit. Instead, the transcript, jury instructions, and Special Verdict show that the jury considered the Memorandum of Interest and the parties' conflicting testimony concerning Michael's motivations for recording it, and found the facts as alleged by Kevin and Margaret, not Michael.

Michael argues that Kevin and Margaret's Motion for Summary Judgment should be denied because the jury did not apportion its award between the breach of contract and slander of title claims. The Court accepts Kevin and Margaret's response to this argument. In their post-

10

trial motion for judgment on the verdict, they contended that the jury's findings "are sufficient to support the full damages amount of $280,000 for slander of title." The Ozaukee County Circuit Court granted Kevin and Margaret's motion arguing that the damages were indivisible, and that judgment should be recognized here.

Finally, Michael contends that Kevin provided perjured testimony about TCF Bank's rejection of the financing. The transcript shows that Michael raised questions about the alleged rejection of the financing during the trial, and Michael also raised the questionable testimony in his post-trial Motion. Unless and until the Ozaukee County Circuit Court or a Wisconsin appellate court accepts Michael's arguments about the allegedly perjured testimony, those arguments do not create a disputed issue of fact here.

Conclusion

Although Michael's assertions about the jury's conclusions have some merit, and the Court commends the efforts of both counsel, the Court holds that the findings of the jury correspond to the elements of a willful and malicious injury under § 523(a)(6) of the Bankruptcy Code. The Court will therefore grant Kevin and Margaret's Motion for Summary Judgment.

Dated: November 5, 2012

By the Court:

*Susan Kelley*

Susan V. Kelley
U.S. Bankruptcy Judge

11

App. 32

0890195 - 1

| Document No. | MEMORANDUM OF INTEREST IN REAL ESTATE |
|---|---|

0890195

RONALD A. VOIGT
OZAUKEE COUNTY
REGISTER OF DEEDS
PORT WASHINGTON, WI
TXID: 59401

RECORDED ON
09/26/2008    09:51AM

REC FEE:   13.00
TRANS FEE: 0.00
PAGES:     3
EXEMPT #:  0

Reserved for Recording Information

If recorded, return to:
Attorney Robert A. Carroll
Carroll Law Office, S.C.
W62 N562 Washington Avenue
Cedarburg, WI 53012

Tax Parcel No. 06-066-0005.004

**EXHIBIT B, Pg 1 of 3**

Case 2:13-cv-00114-CNC   Filed 02/01/13   Page 33 of 117   Document 1-1     33
Case 12-02291-svk   Doc 1   Filed 04/30/12   Page 27 of 42

App. 33

0890195 - 2

# MEMORANDUM OF INTEREST IN REAL ESTATE

Please take notice that by reason of a certain written contract dated October 12, 2007 between the undersigned **MICHAEL JAMES GERARD**, party of the first part, and **KEVIN P. GERARD** and **MARGARET M. GERARD**, husband and wife, parties of the second part (the "*Contract*"), on the 16th day of November, 2007, the undersigned party of the first part acquired an equitable and beneficial interest in the following property (the "*Property*"), in Ozaukee County, Wisconsin:

Lot Three (3) of CERTIFIED SURVEY MAP NO. 3472 recorded in the office of the Register of Deeds for Ozaukee County, Wisconsin, on April 2, 2004 in Volume 1879 of Certified Survey Maps, at Pages 222-225, as Document No. 788969, being a part of Lot 4 and part of Lot 5, Lakeside Court, being a subdivision in part of the Northwest 1/4, Northeast 1/4, Southwest 1/4 and Southeast 1/4 of the Southeast 1/4 of Section 16, Town 10 North, Range 22 East, in the Town of Grafton, Ozaukee County, Wisconsin.

Tax Parcel No. 06-066-0005.004

A copy of pertinent portion of the Contract is attached hereto as **Exhibit A**. Copies of the underlying Residential Offer to Purchase, Counter-Offers 1 & 2, and Amendment(s) referred to in the Contract that were originally signed by party of the first part, but which were assigned to parties of the second part pursuant to the Contract are not attached hereto. By virtue of the Contract and pursuant to all terms, conditions and provisions of it, when title to the Property was conveyed to parties of the second part by a certain Warranty Deed, dated November 16, 2007 and recorded in the office of the Register of Deeds of Ozaukee County, Wisconsin on November 27, 2007 as Document No. 0873933, parties of the second part have acquired title for convenience only and hold title for the benefit of party of the first part.

Executed this 24th day of September, 2008.

_____
Michael James Gerard

Signature of Michael James Gerard authenticated this 24th day of September, 2008.

_____

This instrument was drafted by:
Robert A. Carroll, Attorney at Law
Carroll Law Office, S.C.

Robert A. Carroll
Member State Bar of Wisconsin
State Bar No. 1015352

**EXHIBIT B, Pg 2 of 3**

Case 2:13-cv-00114-CNC   Filed 02/01/13   Page 34 of 117   Document 1-1        34
Case 12-02291-svk   Doc 1   Filed 04/30/12   Page 28 of 42

App. 34

## EXHIBIT A

It is hereby agreed between Michael James Gerard, M.D.,  party of the first part, and Kevin & Margaret Gerard, parties of the second part, that in consideration for the execution of a letter of direction in connection with the purchase of a 5 acre vacant parcel known as Lot 3 Lake Shore Road, Grafton, Wisconsin, that will close on November 16, 2007, that the deed will be to the parties of the second part, JTWRS(Joint Tenants With Right Of Survivorship), and the parties of the second part shall pay the cash down payment of $200,000 and finance the balance through a first mortgage (Purchase Price to be $570,000) and that the party of the first part shall pay all mortgage and real estate tax payments thereon, as well as all payments on the construction loan for the construction of a single family residence.  Upon completion of construction, the parties of the second part shall deed the property to the party of the first part upon payment of all of their out-of-pocket advances for the purchase of this property, plus interest at a rate to be agreed upon.  Copies of the contract to purchase, including counter-offers 1 & 2, and the amendment(s) thereto, are attached hereto.

Dated:  October 12, 2007

Michael James Gerard M.D.
Party of the First Part

Kevin P. Gerard
Party of the Second Part

Margaret M. Gerard
Party of the Second Part

**EXHIBIT B, Pg 3 of 3**

Question Nos. 1 through 8 of the Special Verdict Form ask you to decide whether Defendant violated § 706.13(1) of the Wisconsin Statutes. Section 706.13(1) sets forth standards for a slander of title action and states:

Any person who submits for ... recording, any lien, claim of lien, ... or any other instrument relating to a security interest in or the title to real or personal property, and who knows or should have known that the contents or any part of the contents of the instrument are false, a sham or frivolous, is liable in tort to any person interested in the property whose title is thereby impaired, for punitive damages of $1,000 plus any actual damages caused by the filing, entering or recording.

If Michael Gerard directed his attorney to record the Memorandum of Interest in Real Estate against Lot 3, then the law states Michael Gerard caused the recording of the Memorandum. Question No. 1 of the Special Verdict Form asks whether the Defendant caused the recording of the Memorandum against Lot 3.

If Michael Gerard knew, or should have known, that any part of the Memorandum of Interest in Real Estate, including any part of its Exhibit A, was false, a sham, or frivolous, he is liable to Plaintiffs. If a preponderance of the evidence establishes any part of the Memorandum is false, a sham, or frivolous and Michael Gerard was aware, or should have been aware, of it at the time he caused the recording of the Memorandum, you should answer "Yes" to Question No. 2 of the Special Verdict Form. If you are not so satisfied, you should answer "No" to Question No. 2.

Under certain circumstances, a person may have a conditional privilege to publish statements concerning a title to real estate. However, the privilege does not protect a person if it is abused. For the conditional privilege defense to a slander of title claim to apply, Michael Gerard must have had a reasonable ground for believing the truth of the contents of the memorandum, and the contents of the memorandum must have been reasonably calculated to accomplish a privilege purpose. In this case Michael Gerard claims the contents of the memorandum are conditionally privileged

because he claims an interest in Lot 3 to protect.  An abuse of Michael Gerard's privilege occurred if he at the time of filing the memorandum or any time thereafter knew that any of the contents were false or filed the memorandum in reckless disregard as to the truth or falsity of the contents of the memorandum.

If you answer "Yes" to Question 2, you must also answer Question 6 of the Special Verdict.  Considering the evidence submitted, the law requires you to determine whether Plaintiffs should be required to provide evidence proving the slander of title prevented a particular sale, or whether it is reasonable for Plaintiffs to show with reasonable certainty the slander of title effectively deprived Plaintiff of a market to sell Lot 3 which would otherwise have been available to Plaintiffs. If you believe Plaintiffs should not be required to provide evidence that the slander of title prevented a particular sale and instead believe it is reasonable to require with reasonable certainty the slander of title deprived Plaintiffs of a market available to them at the time of the recording, you should answer "No" to Question No. 6 of the Special Verdict Form. If you believe Plaintiff should prove losses based upon a particular sale, then you should answer "Yes" to Question No. 6.

If you are satisfied that a preponderance of the evidence establishes with a reasonable certainty that Plaintiffs were deprived of a selling market available to them and recording of the Memorandum was a material cause of it, then you should answer "Yes" to Question No. 7 of the Special Verdict Form. If you are not so satisfied, you should answer "No" to Question No. 7.

If you are satisfied by a preponderance of the evidence that shows Plaintiffs' established specific losses from one or more potential purchasers, you should answer "Yes" to Question No. 8 of the Special Verdict Form.  If you are not so satisfied, you should answer "No" to Question No. 8.

Whether the parties to a contract gave it a particular construction is to be regarded by you in giving effect to the provisions of the contract. The subsequent acts of the parties, showing the construction that they themselves have put upon the agreement, are to be considered by you for the purpose of assisting you in arriving at a determination of what the arrangement was between the parties.

AUTHENTICATED COPY
CLERK OF COURTS

STATE OF WISCONSIN : CIRCUIT COURT : OZAUKEE COUNTY

KEVIN P. GERARD and
MARGARET M. GERARD

      Plaintiffs,

vs.              Case No. 2009CV000865

MICHAEL J. GERARD

      Defendant

**Authenticated/Filed**
**Ozaukee County Circuit**

OCT 0 4 2011

Mary Lou Mueller
Clerk of Circuit Court/
Register in Probate

**SPECIAL VERDICT**

We the jury, for our verdict, answer the questions as follows:

*QUESTIONS REGARDING THE SALE OF PLAINTIFFS' PROPERTY*

A.   **Slander of Title**

1.    Did Michael Gerard cause the recording of the Memorandum Of Interest In Real Estate against Lot 3 with the Ozaukee County Register of Deeds Office (hereinafter "Memorandum")?

          **ANSWER (Yes or No):** *Yes*

2.    **Answer this question only if you answered "Yes" to Question No. 1:**  Did Michael Gerard know, or should he have known, the contents, or a part of the contents, of the Memorandum were false, a sham, or frivolous?

          **ANSWER (Yes or No):** *Yes*    11 – 1

3.    **Answer this question only if you answered "Yes" to Question No. 2:**  Did Michael Gerard have a reasonable ground for believing the truth of all of the contents of the memorandum?

          **ANSWER (Yes or No):** *No*    11 – 1

1

App. 38

4.  Answer this question only if you answered "Yes" to Question No. 3: Were all of the contents of the memorandum reasonably calculated by Michael Gerard to accomplish a privileged purpose?

    ANSWER (Yes or No): _____

5.  Answer this question only if you answered "Yes" to Question No. 4: At any time, did Michael Gerard abuse the privilege when he filed and maintained the filing of the memorandum?

    ANSWER (Yes or No): _____

6.  Answer this question only if you answered "Yes" to Question No. 2: Is it a practical possibility for Kevin Gerard and Margaret Gerard to show specific losses from individual potential purchasers?

    ANSWER (Yes or No): *NO*

7.  Answer this question only if you answered "NO" to Question No. 6: Were Kevin Gerard and Margaret Gerard deprived of a market which would have been available to them if the Memorandum had not been recorded?

    ANSWER (Yes or No): *Yes*

8.  Answer this question only if you answered "YES" to Question No. 2: Did Kevin Gerard and Margaret Gerard show specific losses from individual potential purchasers?

    ANSWER (Yes or No): *Yes*

B.  **Breach of Contract**

9.  Did Kevin Gerard and Margaret Gerard have an agreement with Michael Gerard?

    ANSWER (Yes or No): *Yes*

2

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF WISCONSIN

In re:                                              )      In Proceedings Under Chapter 11
                                                    )
Michael and Nancey Gerard,                          )      Case No. 12-21108-svk
                                                    )
                    Debtors.                        )

Kevin P. and Margaret M. Gerard,

        Plaintiffs,                                        Adversary No. 12-02291-svk

        v.

Michael J. Gerard,

        Defendant.

DECLARATION OF MICHAEL J. GERARD

I, Michael J. Gerard, make this declaration pursuant to 28 U.S.C. §1746.

1. I am the defendant in the above captioned adversary proceeding and I was the

defendant in Ozaukee County Circuit Court Case No. 2009CV865 (hereinafter the

"Ozaukee Action").

2. I make this declaration in opposition to the motion for summary judgment filed by

plaintiffs.

3. Attached hereto as Exhibit A is a true and correct copy of the jury instructions

that were read to the jury in the Ozaukee Action.

4. One of the issues addressed in the Ozaukee Action was ownership of a parcel of

real estate located in Grafton, Wisconsin (hereinafter "Grafton Parcel").

5. At all times prior to and during the trial of the Ozaukee Action, based on a written

agreement with the plaintiffs and statements made to me by plaintiff,

Case 2:13-cv-00114-CNC   Filed 02/01/13   Page 82 of 137   Document 1-3          82
Case 12-02291-svk   Doc 22   Filed 08/30/12   Page 1 of 2

App. 40

Kevin Gerard, I believed I possessed an equitable ownership interest in the

Grafton Parcel.

6.  My intent in recording a Memorandum of Interest against the Grafton Parcel was

to protect the equitable ownership interest I believed I possessed.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: August 28, 2012

_____
Michael J. Gerard

34.    The Writing fails to establish a rate of interest and fails to provide dates of

performance regarding obtaining a construction loan and constructing a single family

residence upon Lot 3. *Id.*

### FIRST CLAIM FOR RELIEF
### Declaration of Interest/Quiet Title

35.    Paragraphs 1-34 are re-alleged and incorporated into this claim as if fully set forth

herein.

36.    Plaintiff demands the interest of the Plaintiff be established against the adverse

claims of Defendant.

### SECOND CLAIM FOR RELIEF
### Slander of Title

37.    Paragraphs 1-36 are re-alleged and incorporated into this claim as if fully set forth

herein.

38.    Defendant recorded or caused to be recorded the Notice of Equity Interest against

Lot 3 in the Ozaukee County Register of Deeds Office on September 26, 2008 as

document number 0890195.

39.    Defendant knew or should have known that the contents or any part of the

contents of the Notice of Equity Interest are false, a sham or frivolous.

### THIRD CLAIM FOR RELIEF
### Partition

40.    Paragraphs 1-39 are re-alleged and incorporated into this claim as if fully set forth

herein.

6

41.    Defendant made an initial contribution of Five Thousand Two Hundred Fifty Dollars ($5,250.00) towards the purchase Lot 3.

42.    Plaintiff made an initial contribution of Ninety Four Thousand Three Hundred Thirty-Seven Dollars ($94,337.00) towards the purchase Lot 3.

43.    Plaintiff has a 94.73% interest in Lot 3 and Defendant has a 5.27% interest in Lot 3.

44.    Plaintiff demands partition of Lot 3 based upon the interests of the parties.


## FOURTH CLAIM FOR RELIEF
### Breach of Contract

45.    Paragraphs 1-44 are re-alleged and incorporated into this claim as if fully set forth herein.

46.    In consideration of Plaintiff's assumption of Defendant's purchase contract and Plaintiff's actual purchase of Lot 3, Defendant agreed to purchase Lot 3 from Defendant no later than one year from the date of Plaintiff's purchase of Lot 3.

47.    Defendant orally agreed to reimburse Plaintiff for any and all of Plaintiff's out-of-pocket expenses regarding Plaintiff's purchase and subsequent holding costs of Lot 3 including without limitation all down payment funds, closing costs, taxes, loan fees and loan payments.

48.    Defendant has failed to purchase Lot 3 from Plaintiff.

49.    Defendant has failed to fully reimburse Plaintiff for Plaintiffs out-of-pocket expenses for the purchase and holding of Lot 3.

7

Case 2:13-cv-00114-CNC    Filed 02/01/13    Page 20 of 117    Document 1-1        20
Case 12-02291-svk    Doc 1    Filed 04/30/12    Page 14 of 42

App. 43

Case No. 14-1496

# UNITED STATES COURT OF APPEALS
# FOR THE SEVENTH CIRCUIT

---

**KEVIN GERARD and MARGARET GERARD,**

      **Plaintiff-Appellees-Appellees,**

**v.**                              **Case No. 14-1496**

**MICHAEL J. GERARD**

      **Defendant-Appellant-Appellant.**

---

# ON APPEAL FROM THE UNITED STATES DISTRICT COURT, EASTERN DISTRICT
# OF WISCONSIN, THE HONORABLE CHARLES N. CLEVERT PRESIDING,
# E.D. WIS. CASE NO. 13-CV-114

---

# CERTIFICATE OF SERVICE

---

      I, Michael P. Dunn certify that on August 28, 2014 I filed the brief (containing the required appendix) of Defendant-Appellant-Appellant Michael J. Gerard by and through the ECF filing system which system upon information and belief will serve a copy on counsel for appellees.  I further emailed a copy of the brief to counsel for appellees.

      Dated August 28, 2014.

                            /s/ Michael P. Dunn
                            Michael P. Dunn